Andrew Gerber
Vanessa Sorrentino
KUSHNIRSKY GERBER PLLC
27 Union Square West, Suite 301
New York, New York 10003
(212) 882-1320
andrew@kgfirm.com
vanessa@kgfirm.com
*Attorneys for Plaintiff Atelier Eumori*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ATELIER EUMORI, | |
| *Plaintiff*, | Case No. 24-CV-3531 |
| v. | **COMPLAINT FOR COPYRIGHT INFRINGEMENT** |
| ROADGET BUSINESS PTE. LTD., a Singapore private limited company; SHEIN DISTRIBUTION CORPORATION, a Delaware corporation; SHEIN US SERVICES, LLC, a Delaware limited liability company; SHEIN TECHNOLOGY LLC, a Delaware limited liability company; and FASHION CHOICE PTE. LTD., a Singapore private limited company, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

Plaintiff Atelier Eumori ("Plaintiff" or "Atelier Eumori"), by and through its undersigned attorneys, for its complaint against defendants Roadget Business Pte. Ltd. ("Roadget"), Shein Distribution Corporation ("SDC"); Shein US Services, LLC ("SUS"), Shein Technology LLC ("STC"); and Fashion Choice Pte. Ltd. ("Fashion Choice") (collectively, the "Defendants"), alleges as follows:

1

## NATURE OF THE ACTION

1.    This is an action for copyright infringement brought by an independent design company against a web of interrelated corporate entities that do business in the United States and around the world as the fast fashion e-commerce brands Shein, Romwe, and Emmacloth.

2.    Defendants, via their ownership of the Shein, Romwe, and Emmacloth brands, and their operation of the corresponding Shein, Romwe, and Emmacloth websites and mobile applications, flood the market with thousands of cheap, infringing products with complete disregard for the intellectual property rights of others.

3.    Defendants, together with their corporate affiliates and a multitude of suppliers, have engaged in a coordinated scheme with the purpose, plan, and effect of infringing the intellectual property of independent artists and businesses for their own financial gain.

4.    In the past five years alone, intellectual property owners have collectively filed more than 100 infringement lawsuits against Defendants and/or their corporate affiliates and predecessors – a rate that far outpaces infringement lawsuits brought against similar companies. Many more artists and copyright holders have either resolved or dropped potential infringement claims against Defendants, and/or their corporate affiliates and predecessors without ever filing suit, while others have never even learned that their intellectual property was infringed in the first place.

5.    In a recent legal filing, Defendant Roadget, the holding company for the Shein, Romwe, and Emmacloth brands and intellectual property, had the audacity to claim that "[t]he success of the [Shein] brand inspires many copycats. Roadget regularly finds sellers on e-commerce platforms selling goods bearing infringing copies of its copyrighted designs." In reality,

Defendants are among the biggest sellers of goods bearing infringing copies of copyrighted designs.

6.      Due in no small part to this willful and widespread copyright infringement scheme, the Shein brand has achieved major commercial success—more than $10 billion in sales in the United States in 2022. In fact, Defendant Roadget has filed paperwork with the U.S. Securities and Exchange Commission ("SEC") indicating its intent to parlay the Shein brand's business success into a lucrative IPO in the United States this year.

7.      Plaintiff is one of many independent artists and businesses that have been and continue to be systematically targeted and exploited by Defendants' unlawful conduct.  Defendants have displayed and sold no fewer than 200 separate and distinct products that infringe five of Plaintiff's original designs. The astounding scope of Defendants' theft has made it virtually impossible for Plaintiff to run its business.

8.      Plaintiff seeks relief for Defendants' sale and display of hundreds of products featuring unauthorized and infringing copies of its original designs. Plaintiff seeks injunctive relief, monetary damages, costs, attorneys' fees, and such other relief as the Court deems necessary to compensate Plaintiff for Defendants' widespread and willful copyright infringement.

## PARTIES

9.      Plaintiff Atelier Eumori is a sole proprietorship organized and existing under the laws of the country of Singapore. Plaintiff owns the respective copyrights for the five original designs at issue in this suit. All of the designs at issue were first published in Singapore and are foreign works as defined in the Copyright Act. *See* 17 U.S.C. § 104(b)(2). Accordingly, they are exempt from the requirements of 17 U.S.C. § 411(a).

10. Defendant Roadget is a private limited company organized under the laws of the country of Singapore. Roadget is the owner of the Shein brand, the Shein trademark, the website located at shein.com (the "Shein Website"), and the corresponding mobile application (the "Shein Mobile App"). Roadget is also the owner of the Romwe brand, the Romwe trademark, the website located at Romwe.com (the "Romwe Website"), and the corresponding mobile application (the "Romwe Mobile App"). Roadget is also the owner of the Emmacloth brand, the Emmacloth trademark, and the website located at emmacloth.com (the "Emmacloth Website").

11. Defendant SDC is a corporation organized under the laws of the State of Delaware. SDC is Roadget's affiliate and licensee and is involved in the operation of the Shein and Romwe brands in the United States, including the offering and display of products for sale on the Shein Website and Shein Mobile App and the Romwe Website and Romwe Mobile App. SDC is also responsible for the distribution of the Shein brand's products in the United States.

12. Defendant STC is a limited liability company organized under the laws of the State of Delaware. STC is Roadget's affiliate and licensee and is involved in the daily operation and maintenance of the Shein Website and Shein Mobile App. STC oversees security, risk, privacy, and Defendants' compliance with various U.S. laws, including the Copyright Act and other intellectual property laws. On information and belief, STC utilizes artificial intelligence technology that allows for, facilitates, and/or induces the offering and display of infringing products for sale on the Shein Website and Shein Mobile App.

13. Defendant SUS is a limited liability company organized under the laws of the State of Delaware. SUS is Roadget's affiliate and licensee and is involved in the operation of the Shein brand in the United States, including the offering and display of products for sale on the Shein Website and Shein Mobile App.

14.     Defendant Fashion Choice is a private limited company organized under the laws of the country of Singapore. Fashion Choice is Roadget's affiliate and licensee and is involved in the operation of the Emmacloth brand in the United States, including the offering and display of products for sale on the Emmacloth Website.

## JURISDICTION AND VENUE

15.     This matter is an action for copyright infringement under the U.S. Copyright Act, 17 U.S.C. § 101, *et seq*.

16.     This Court has subject matter jurisdiction pursuant to 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338.

17.     This Court has personal jurisdiction over Defendants pursuant to N.Y.C.P.L.R. §§ 301 and 302 and Fed. R. Civ. P. 4(k)(2) because Defendants do systematic business in New York and in this District by displaying, offering for sale, targeting, advertising, and selling products to New York consumers through the Shein Website, the Shein Mobile App, the Romwe Website, the Romwe Mobile App, the Emmacloth Website, and various social media platforms. Defendants have also committed unlawful acts outside of New York that caused injury to Plaintiff within New York and this District; regularly do or solicit business in New York and this District; derive substantial revenue from goods used or services rendered in New York and this District; expect or reasonably should expect their infringing conduct to have consequences in New York and this District; and derive substantial revenue from interstate commerce.

18.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400 because Defendants committed unlawful acts of infringement in this District, Defendants' unlawful conduct resulted in damage to Plaintiff in this District, and Defendants do business here and are subject to personal jurisdiction here.

## FACTUAL BACKGROUND

### I.    Atelier Eumori and the Original Designs

19.    Atelier Eumori is a design company owned and operated by Calandra Wong Zhi Xin, an independent artist and illustrator based in Singapore. Ms. Wong's designs are inspired by her daily life and her interest in Japanese popular culture. Atelier Eumori sells enamel pins, charms, earrings, apparel, stationery, and home décor, among other products, through the e-commerce website and online storefront located at ateliereumori.com and through the Etsy storefront located at etsy.com/shop/AtelierEumori.

20.    Ms. Wong started Atelier Eumori in 2021 after leaving her job in the healthcare industry due to stress and fatigue resulting from the COVID-19 pandemic.

21.    After months spent drawing and crafting, Ms. Wong decided to pursue her passion full-time and start her own small business.

22.    Atelier Eumori initially began selling Ms. Wong's hand-crafted accessories and illustrations as stickers, enamel pins, and keychains.

23.    Ms. Wong then created a unique set of enamel pins, each of which featured an interactive element.

24.    In March 2023, Atelier Eumori launched its first Kickstarter crowdfunding campaign to help fund the production of these unique interactive enamel pins.

25.    By November 2023, Atelier Eumori had successfully raised over $90,000 from over 1,600 individual backers to support the production of these interactive enamel pins.

26.    As a result of Atelier Eumori's successful crowdfunding campaign, these pin designs achieved a viral level of popularity on social media platforms like TikTok and Instagram.

27.     The excitement that Ms. Wong felt from the success of her designs was soon eclipsed by the deluge of unauthorized, low-quality, cheap infringing knockoffs for sale on the Internet.

28.     Upon information and belief, Chinese entities frequently copy the designs and trends that experience viral success on social media, quickly manufacture large quantities of infringing knockoffs, and sell these knockoffs to large retailers and brands such as Shein, Romwe, and Emmacloth.

29.     The Shein brand is one of the biggest sources of these unauthorized, low-quality, cheap infringing knockoffs of Plaintiff's designs.

30.     To date, Defendants have displayed, marketed, and sold at least 200 distinct products that infringe five of Plaintiff's interactive enamel pin designs.

31.     Plaintiff's five original designs that are at issue in this suit are the *Social Battery Pin,* the *Mood Tracker Sliding Enamel Pin,* the *Caffeinated Status Coffee Sliding Enamel Pin*, the *Yes & No Moth Tarot Spinning Enamel Pin*, and the *Rainbow Yes & No Moth Tarot Spinning Enamel Pin*, shown below (the "Original Designs").

*Social Battery Pin*



*Mood Tracker Sliding Enamel Pin*



*Caffeinated Status Coffee Sliding Enamel Pin*



*Yes & No Moth Tarot Spinning Enamel Pin*



*Rainbow Yes & No Moth Tarot Spinning Enamel Pin*



32.    Plaintiff received federal copyright registration No. VA 2-369-855 for the *Social Battery Pin* Original Design on August 2, 2023.

33.    The *Social Battery Pin* is the most popular of Plaintiff's interactive enamel pin designs and is the design that Defendants have copied most frequently.

34.    Defendants have displayed and sold at least 153 distinct products that infringe the *Social Battery Pin* Original Design.

35.    The astounding scope of Defendants' infringement has contributed to a significant decline in sales of Plaintiff's products.

36.    Plaintiff sells its interactive enamel pins featuring the Original Designs, which are gold-plated and made of high-quality materials, for approximately $25 each.

37.    Defendants sell low-quality knockoffs of the Original Designs made of unknown materials for extraordinarily low prices, often as low as $1 or $2.

38.    While some consumers continue to buy the Original Designs from Plaintiff, the majority of consumers have opted to buy Defendants' cheap knockoffs made of low-quality materials.

39.    This massive infringement scheme has led to a significant drop in sales for Plaintiff and the overall devaluation of Plaintiff's designs, which has impacted Plaintiff's ability to subsist and operate as an independent design company.

**II.    Defendants' Willful Infringement and Unlawful Conduct**

<u>Defendants' Attempts to Evade Liability While Parlaying Their Widespread Copyright Infringement into a Lucrative IPO</u>

40.    Defendants own and operate the fast fashion brands Shein, Romwe, and Emmacloth, and their corresponding intellectual property, websites, and mobile applications,

which advertise, display, and sell apparel, accessories, jewelry, and other products to consumers in the United States and around the world.

41.    Defendants have come under significant scrutiny from consumers, intellectual property rightsholders, human rights activists, climate activists, and the United States Government for their unlawful and deceptive business practices.

42.    Defendants profit by flooding the market with cheap, infringing products with complete disregard for the intellectual property rights of others. In connection with the near-endless succession of intellectual property infringements, Defendants claim to discipline the unscrupulous manufacturers and suppliers with whom they closely work but in reality do nothing but continue to order more infringing products from them.

43.    When sued for intellectual property infringement, Defendants invariably seek to shift the blame to third parties, claiming that they have no responsibility for these allegedly "rogue" manufacturers and suppliers.

44.    However, it has been alleged in a recent lawsuit filed against Defendants Roadget and STC that third-party suppliers are required to grant the Shein brand "a worldwide, irrevocable, and exclusive license" to "publish, display, reproduce, improve, or otherwise use" the suppliers' products and to "transfer . . . the IP [intellectual property] rights in the images, photos, or videos of such products" to the Shein brand.

45.    Thus, the relationship between Defendants and their third-party manufacturers and suppliers is one of complete control and supervision, and any overtures by Defendants to the contrary are false and intended to evade liability.

46.    Defendants also operate via a variety of corporate entities, brands, retailers, websites, and mobile applications to shield themselves from liability for the rampant infringement

driving their financial success and to avoid the recurring public relations scandals plaguing their brands.

47.    For example, in late 2021, Defendant Roadget replaced Hong Kong-based Zoetop Business Co., Ltd. ("Zoetop") as the legal entity owning the Shein, Romwe, and Emmacloth brands, intellectual property, websites, and mobile applications, in part because Zoetop had built a reputation as an intellectual property infringer.[1] The Shein, Romwe, and Emmacloth brands currently appear to be operating under the "Roadget" umbrella, at least until they decide to again shift their unlawful scheme to the latest group of shell-game entities.

48.    Despite having been repeatedly sued for copyright infringement, Defendants continue to willfully infringe the works of independent artists and businesses, including many of the same artists and businesses who have sued Defendants and/or their corporate affiliates and predecessors for copyright infringement in the past, presumably because it is far more profitable to do so than to comply with the law, e.g., by creating or licensing original works.

49.    Defendant Roadget is now seeking to parlay the commercial success of the Shein brand in particular—which can be significantly attributed to its widespread infringement of the work of independent artists and businesses like Plaintiff—into a lucrative IPO in the United States. Defendant Roadget has filed paperwork with the SEC indicating its intent to bring the Shein brand public, reportedly seeking a valuation of up to $90 billion.[2]

<u>Defendants' Worldwide Sale of Infringing Products</u>

---

[1] *See* Chen Lin, EXCLUSIVE-Chinese fashion firm Shein on Singapore hiring spree as it shifts key assets there, Reuters, Feb. 16, 2022, https://www.reuters.com/article/shein-singapore-idCNL1N2UR09Q.

[2] *See* Kane Wu and Anirban Sen, China's Shein Files for US IPO in Major Test for Investor Appetite -Sources, Reuters, Nov. 27, 2023, https://www.reuters.com/markets/deals/chinese-fast-fashion-shein-files-us-ipo-wsj-2023-11-27/.

50.     Defendants work in conjunction with many other affiliated global corporate entities to sell products, including the 200 infringing products in this Complaint, to consumers in over 150 countries.

51.     Upon information and belief, Defendants' sale of infringing products to consumers outside of the United States is initiated, enabled, and facilitated by Defendants' infringing conduct in the United States.

52.     Upon information and belief, Defendants' infringing conduct includes, but is not limited to, the uploading and storage of images of infringing products on servers located in the United States, which are then displayed on webpages accessed by consumers in the United States and around the world.

53.     Upon information and belief, Defendants' infringing conduct in the United States leads to the sale of infringing products in the United States and around the world.

54.     Upon information and belief, the infringing conduct committed by Defendants in the United States constitutes a "predicate act" of the infringing conduct committed by Defendants outside of the United States.

<u>The Emmacloth Website and the Emmacloth Infringing Product</u>

55.     Defendant Roadget owns the Emmacloth brand, the Emmacloth Website, and corresponding intellectual property.

56.     Together, Defendants Roadget and Fashion Choice operate the Emmacloth Website, through which they offer and display products for sale.

57.     Defendants Roadget and Fashion Choice are direct sellers of the products on the Emmacloth Website.

58.    Defendants Roadget and Fashion Choice sell products under the Emmacloth brand via the Emmacloth Website directly to consumers in New York and in this District.

59.    Without authorization from Plaintiff, Defendants Roadget and Fashion Choice created, manufactured, caused to be manufactured, imported, marketed, distributed, displayed and/or sold at least one product featuring a design identical or substantially similar to the *Social Battery Pin* Original Design (the "Emmacloth Infringing Product"), shown below.

60.    Large numbers of new, distinct products are added to the Emmacloth Website every day. Due to this large daily influx of products, upon information and belief, additional products are and/or have been displayed and sold on the Emmacloth Website that infringe the *Social Battery Pin* Original Design and/or Plaintiff's other original copyrighted designs.

61.    Below is a side-by-side comparison of the *Social Battery Pin* Original Design and the Emmacloth Infringing Product. The below comparison makes immediately apparent that the elements, composition, arrangement, layout, rendering, design, and appearance of the Emmacloth Infringing Product are virtually identical to those of the *Social Battery Pin* Original Design.

| Original Design | Infringing Product |
|---|---|
| *Social Battery Pin* | SKU: sg2309095961900019 |
| |  |
| |  |
| | *Detail of Infringing Product* |

62.    Defendants Roadget and Fashion Choice have directly financially benefited from displaying and selling the Emmacloth Infringing Product on the Emmacloth Website.

63.    Defendants Roadget's and Fashion Choice's infringement of the *Social Battery Pin* Original Design has been willful. Defendants Roadget and Fashion Choice never attempted to contact Plaintiff to inquire about properly licensing the *Social Battery Pin* Original Design and instead chose to produce, procure, and sell an unauthorized, low-quality infringing copy of the design.

64.    Defendants Roadget and Fashion Choice know they are selling cheap products from manufacturers, suppliers, and third-party sellers that regularly deal in infringing products but continue to do so without implementing any reasonable checks to prevent the continued flood of infringing goods into the United States and this District.

65.    Plaintiff has been forced to file this action to protect its rights and livelihood and to protect the integrity of its artwork.

The Romwe Website, Romwe Mobile App, and the Romwe Infringing Product

66.    Defendant Roadget owns the Romwe brand, the Romwe Website, the Romwe Mobile App, and corresponding intellectual property.

67.    Together, Defendants Roadget and SDC operate the Romwe Website and Romwe Mobile App, through which they offer and display products for sale.

68.    Defendants Roadget and SDC are direct sellers of the products on the Romwe Website and Romwe Mobile App.

69.    Defendants Roadget and SDC sell products under the Romwe brand via the Romwe Website and Romwe Mobile App directly to consumers in New York and in this District.

70.    Without authorization from Plaintiff, Defendants Roadget and SDC created, manufactured, caused to be manufactured, imported, marketed, distributed, displayed and/or sold at least one product featuring a design identical or substantially similar to the *Mood Tracker Sliding Enamel Pin* Original Design (the "Romwe Infringing Product"), shown below.

71.    Large numbers of new, distinct products are added to the Romwe Website and Romwe Mobile App every day. Due to this large daily influx of products, upon information and belief, additional products are and/or have been displayed and sold on the Romwe Website and Romwe Mobile App that infringe the *Mood Tracker Sliding Enamel Pin* Original Design and/or Plaintiff's other original copyrighted designs.

72.    Below is a side-by-side comparison of the *Mood Tracker Sliding Enamel Pin* Original Design and the Romwe Infringing Product. The below comparison makes immediately apparent that the elements, composition, arrangement, layout, rendering, design, and appearance of the Romwe Infringing Product are virtually identical to those of the *Mood Tracker Sliding Enamel Pin* Original Design.

| Original Design | Infringing Product |
|---|---|
| *Mood Tracker Sliding Enamel Pin* | SKU: Unknown[3] |



*Detail of Infringing Product*

73.    Defendants Roadget and SDC have directly financially benefited from displaying and selling the Romwe Infringing Product on the Romwe Website and Romwe Mobile App.

74.    Defendants Roadget's and SDC's infringement of the *Mood Tracker Sliding Enamel Pin* Original Design has been willful. Defendants Roadget and SDC never attempted to contact Plaintiff to inquire about properly licensing the *Mood Tracker Sliding Enamel Pin* Original Design and instead chose to produce, procure, and sell an unauthorized, low-quality infringing copy of the design.

75.    Defendants Roadget and SDC know they are selling cheap products from manufacturers, suppliers, and third-party sellers that regularly deal in infringing products but continue to do so without implementing any reasonable checks to prevent the continued flood of infringing goods into the United States and this District.

76.    Plaintiff has been forced to file this action to protect its rights and livelihood and to protect the integrity of its artwork.

<u>The Shein Website, the Shein Mobile App, and the Shein Infringing Products</u>

77.    Defendant Roadget owns the Shein brand, the Shein Website, the Shein Mobile App, and corresponding intellectual property.

78.    Together, Defendants Roadget, SDC, STC, and SUS operate the Shein Website and Shein Mobile App, through which they offer and display products for sale. The Shein brand is the central pillar of Defendants' web of interconnected fast fashion e-commerce brands.

79.    Defendants Roadget, SDC, STC, and SUS sell products under the Shein brand via the Shein Website and Shein Mobile App directly to consumers in New York and in this District.

80.    The Shein brand is one of the biggest sources of infringing copies of Plaintiff's Original Designs.

81.     Without authorization from Plaintiff, Defendants Roadget, SDC, STC, and SUS created, manufactured, caused to be manufactured, imported, marketed, distributed, displayed and/or sold at least 198 different products featuring designs identical or substantially similar to the Original Designs (the "Shein Infringing Products").

82.     Thousands of new products are added to the Shein Website and Shein Mobile App every day.[4] Due to this large daily influx of products, upon information and belief, additional products are and/or have been displayed and sold on the Shein Website and Shein Mobile App that infringe the Original Designs and/or Plaintiff's other original copyrighted designs.

Unauthorized Reproductions of the *Social Battery Pin* Original Design Displayed and Sold on the Shein Website and Shein Mobile App

83.     To date, Plaintiff has discovered that Defendants Roadget, SDC, STC, and SUS created, manufactured, caused to be manufactured, imported, marketed, distributed, displayed and/or sold at least 153 different products featuring designs identical or substantially similar to the *Social Battery Pin* Original Design (the "Shein *Social Battery Pin* Infringing Products") without authorization from Plaintiff.

84.     Below is a side-by-side comparison of the *Social Battery Pin* Original Design and one of the Shein *Social Battery Pin* Infringing Products. This comparison makes immediately apparent that the elements, compositions, arrangements, layouts, renderings, designs, and appearances of the Shein *Social Battery Pin* Infringing Products are virtually identical to those of the *Social Battery Pin* Original Design.

---

[4] *See* Alina Selyukh, America can't resist fast fashion. Shein, with all its issues, is tailored for it, NPR, Oct. 13, 2023, https://www.npr.org/2023/10/13/1204983212/shein-america-fast-fashion-legal-issues.

| Original Design | Infringing Product |
|---|---|
| *Social Battery Pin* | SKU: sg2308039355721048 |
|  |  |

85.     Images of the 153 distinct Shein *Social Battery Pin* Infringing Products that have been displayed and sold on the Shein Website and Shein Mobile App by Defendants Roadget, SDC, STC, and SUS are shown in Exhibit A attached hereto.

86.     Below are the 152 known unique SKU numbers for the Shein *Social Battery Pin* Infringing Products that have been displayed and sold on the Shein Website and Shein Mobile App by Defendants Roadget, SDC, STC, and SUS[5]:

| | | |
|---|---|---|
| 1. sg2308039355721048 | 2. sg2308039355757457 | 3. sg2308039355770028 |
| 4. sj2307083237380500 | 5. sj2307083237355907 | 6. sj2310258012966117 |
| 7. sj2310258012921001 | 8. sj2305241691982186 | 9. sj2305241691914145 |
| 10. sj2305241691922722 | 11. sj2305241691942112 | 12. sj2306271922174775 |
| 13. sj2306271922188584 | 14. sj2311113613226782 | 15. sj2306283223369683 |
| 16. sj2309107097426640 | 17. sj2309107097476368 | 18. sc2306262855542665 |
| 19. sc2306262855554513 | 20. sc2306262855573233 | 21. sj2312065707717300 |
| 22. sg2309095961900019 | 23. sj2310162908952262 | 24. sl2310199719358306 |
| 25. sh2308028084618145 | 26. sh2308313467894400 | 27. sj2401071827497994 |
| 28. sg2307104344833955 | 29. sh2307048318900241 | 30. sl2310187389851050 |
| 31. sg2307057487456368 | 32. sh2306063403033242 | 33. sg2307104344878470 |
| 34. sj2402197733174424 | 35. sj2312218837483390 | 36. sr2311045468364943 |
| 37. sk2312246692169259 | 38. sc2306262855529343 | 39. sk2308177797519198 |
| 40. sg2308242243632172 | 41. sg2308242243691929 | 42. sj2310162908995563 |

---

[5] Although Defendants Roadget, SDC, STC, and SUS displayed and sold 153 products that infringed Plaintiff's *Social Battery Pin* Original Design, the SKU is unknown for the infringing product sold on the Shein Website at https://shein.com/My-Social-Battery-Interactive-Enamel-Pin-Funny-Mood-Slidable-Badge-Brooch-For-7-Days-Mood-Expressing-Pin-p-21310999-cat-2156.html.

| | | |
|---|---|---|
| 43. sl2310182350488606 | 44. sc2307083515477383 | 45. sg2310244484262466 |
| 46. sj2306265141655333 | 47. sh2307220134168180 | 48. sj2308041555455294 |
| 49. sj2306253463568944 | 50. sk2312220264252722 | 51. sh2308101525266626 |
| 52. sc2311104229366219 | 53. sj2310224410342452 | 54. sh2307218747102632 |
| 55. sh2306287693456959 | 56. sc2306079114923995 | 57. sc2310123791996114 |
| 58. sc2310096839364113 | 59. sc2310308518047904 | 60. sh2307128541000266 |
| 61. sl2310187389818300 | 62. sc2309150325235135 | 63. sc2310123791966404 |
| 64. sc2310233359806633 | 65. sh2309159121071165 | 66. sh2306278393148176 |
| 67. sh2309235581819467 | 68. sj2311070757211131 | 69. sc2309212538749681 |
| 70. sh2307128541060600 | 71. sj2311102978538928 | 72. sc2306246942244314 |
| 73. sj2310224410371236 | 74. sj2312108002381106 | 75. sl2310134616673011 |
| 76. sc2309273058258699 | 77. sh2310121117498875 | 78. sh2306278393184279 |
| 79. sj2311204757295620 | 80. sc2309212652662653 | 81. sl2310154448815611 |
| 82. sj2311070757214995 | 83. sc2310136711541165 | 84. sj2310172535844898 |
| 85. sc2310182877018868 | 86. sh2306294351264834 | 87. sl2310142173311886 |
| 88. sj2311229189238131 | 89. sj2312036618141777 | 90. sk2312220264222593 |
| 91. sc2310308518055498 | 92. sl2308118176670770 | 93. sr2311045468335573 |
| 94. sc2306262855578363 | 95. sh2307129594674396 | 96. sh2312269815548728 |
| 97. sc2311104229384686 | 98. sj2401071827466807 | 99. sj2310258012918826 |
| 100. sj2401071827443255 | 101. sj2310206909272111 | 102. sj2310258012982086 |
| 103. sj2310224410371426 | 104. sc2402222052224032 | 105. sh2403064765373008 |
| 106. sc2312216595685105 | 107. sj2308105055992217 | 108. sg2306205685051883 |
| 109. sj2401071827406551 | 110. sk2403138987742890 | 111. sk2403138987707937 |

| | | |
|---|---|---|
| 112. sk2403111126362813 | 113. sk2403137986888189 | 114. sk2403137986890680 |
| 115. sk2403137986816885 | 116. sk2403137986876455 | 117. sk2403137986879686 |
| 118. sj2403139924254546 | 119. sk2403172280013113 | 120. sr2403195668728418 |
| 121. sr2403195668786919 | 122. sj2403272800123374 | 123. sc2404129551567558 |
| 124. sj2404103143498118 | 125. sc2403141438197144 | 126. sk2404016533967974 |
| 127. sk2403314025432082 | 128. sk2403314025473166 | 129. sk2403314025407880 |
| 130. sh2403234351013582 | 131. sc2404052303893330 | 132. sj2404106493410348 |
| 133. sc2404078994336686 | 134. sc2404076558182622 | 135. sk2403313134317509 |
| 136. sk2403313134315517 | 137. sk2403313134312973 | 138. sk2403313134333489 |
| 139. sk2403313134394249 | 140. sk2403313134328719 | 141. sj2404102423562664 |
| 142. sc2404225947199791 | 143. sc2404124441814916 | 144. sc2309273058266646 |
| 145. sc2310165822234148 | 146. sc2309150325201757 | 147. sc2308311917377786 |
| 148. sj2307275709056856 | 149. sg2306192242734730 | 150. sj2306306536276663 |
| 151. sj2401071827466742 | 152. sc2310233359833980 | |

<u>Unauthorized Reproductions of the *Mood Tracker Sliding Enamel Pin* Original Design Displayed and Sold on the Shein Website and Shein Mobile App</u>

87.     To date, Plaintiff has discovered that Defendants Roadget, SDC, STC, and SUS created, manufactured, caused to be manufactured, imported, marketed, distributed, displayed and/or sold at least 74 products featuring designs identical or substantially similar to the *Mood Tracker Sliding Enamel Pin* Original Design (the "Shein *Mood Tracker Sliding Enamel Pin* Infringing Products") without authorization from Plaintiff.

88.     Below is a side-by-side comparison of the *Mood Tracker Sliding Enamel Pin* Original Design and one of the Shein *Mood Tracker Sliding Enamel Pin* Infringing Products. This

comparison makes immediately apparent that the elements, compositions, arrangements, layouts, renderings, designs, and appearances of the Shein *Mood Tracker Sliding Enamel Pin* Infringing Products are virtually identical to those of the *Mood Tracker Sliding Enamel Pin* Original Design.

| Original Design | Infringing Product |
|---|---|
| *Mood Tracker Sliding Enamel Pin* | SKU: sg2308039355755580 |
|  |  |

89.    Images of the 74 Shein *Mood Tracker Sliding Enamel Pin* Infringing Products that have been displayed and sold on the Shein Website and Shein Mobile App by Defendants Roadget, SDC, STC, and SUS are shown in <u>Exhibit B</u> attached hereto.

90.    Below are the 74 known unique SKU numbers for the Shein *Mood Tracker Sliding Enamel Pin* Infringing Products that have been displayed and sold on the Shein Website and Shein Mobile App by Defendants Roadget, SDC, STC, and SUS:

| | | |
|---|---|---|
| 1. sg2308039355755580 | 2. sg2308039355722801 | 3. sg2308039355788147 |
| 4. sc2306262855596921 | 5. sh2307214564961181 | 6. sc2306262855546201 |
| 7. sh2312057965822950 | 8. sj2307099305025950 | 9. sc2311104229384686 |
| 10. sj2401071827466807 | 11. sc2401114471761966 | 12. sj2310258012918826 |
| 13. sc2306262855578571 | 14. sg2307104344826406 | 15. sk2310078815822452 |
| 16. sj2401071827443255 | 17. sj2307272188413639 | 18. sj2310206909272111 |
| 19. sh2312057965873155 | 20. sg2310248200857083 | 21. sj2305241691981616 |
| 22. sg2309095961904207 | 23. sj2308143141877919 | 24. sj2310258012982086 |
| 25. sc2312084333248213 | 26. sc2310177991150511 | 27. sj2310224410371426 |
| 28. sc2307157516371241 | 29. sj2306200926648649 | 30. sj2308143141865474 |
| 31. sj2310189800106444 | 32. sj2310258012966117 | 33. sl2310199719358306 |
| 34. sj2401071827497994 | 35. sj2312218837483390 | 36. sg2310244484262466 |
| 37. sc2311104229366219 | 38. sj2310224410342452 | 39. sj2310224410371236 |
| 40. sj2312108002381106 | 41. sc2309273058258699 | 42. sh2307129594674396 |
| 43. sh2309235581881518 | 44. sj2401071827406551 | 45. sg2307057487433197 |
| 46. sj2310210015048055 | 47. sc2308311917306132 | 48. sj2306277667851515 |
| 49. sk2403137986888189 | 50. sk2403137986890680 | 51. sk2403137986816885 |

| 52. sk2403137986876455 | 53. sk2403137986879686 | 54. sk2403138987789229 |
|---|---|---|
| 55. sc2310302972585111 | 56. sr2308237046292477 | 57. sk2403138987739507 |
| 58. sj2403139924254546 | 59. sj2404103143498118 | 60. sk2403314025432082 |
| 61. sk2403314025473166 | 62. sk2403314025407880 | 63. sk2403313134317509 |
| 64. sk2403313134315517 | 65. sk2403313134312973 | 66. sk2403313134333489 |
| 67. sk2403313134394249 | 68. sk2403313134328719 | 69. sj2404102423562664 |
| 70. ss2403035114184874 | 71. sc2404225947199791 | 72. sj2306306536276663 |
| 73. sj2401071827466742 | 74. sj2310210015022527 | |

<u>Unauthorized Reproductions of the *Caffeinated Status Coffee Sliding Enamel Pin* Original Design Displayed and Sold on the Shein Website and Shein Mobile App</u>

91. To date, Plaintiff has discovered that Defendants Roadget, SDC, STC, and SUS created, manufactured, caused to be manufactured, imported, marketed, distributed, displayed and/or sold at least three different products featuring designs identical or substantially similar to the *Caffeinated Status Coffee Sliding Enamel Pin* Original Design (the "Shein *Caffeinated Status Coffee Sliding Enamel Pin* Infringing Products") without authorization from Plaintiff.

92. Below are side-by-side comparisons of the *Caffeinated Status Coffee Sliding Enamel Pin* Original Design and the Shein *Caffeinated Status Coffee Sliding Enamel Pin* Infringing Products. These comparisons make immediately apparent that the elements, compositions, arrangements, layouts, renderings, designs, and appearances of the Shein *Caffeinated Status Coffee Sliding Enamel Pin* Infringing Products are virtually identical to those of the *Caffeinated Status Coffee Sliding Enamel Pin* Original Design.

| Original Design | Infringing Product |
|---|---|
| *Caffeinated Status Coffee Sliding Enamel Pin* | SKU: sc2309040150557361 |
|  |  |

| Original Design | Infringing Product |
|---|---|
| *Caffeinated Status Coffee Sliding Enamel Pin* | SKU: sj2311025552116276 |
|  |  |

| Original Design | Infringing Product |
|---|---|
| *Caffeinated Status Coffee Sliding Enamel Pin* | SKU: sc2311024002594427 |

<u>Unauthorized Reproductions of the *Yes & No Moth Tarot Spinning Enamel Pin* Original
Design Displayed and Sold on the Shein Website and Shein Mobile App</u>

93.    To date, Plaintiff has discovered that Defendants Roadget, SDC, STC, and SUS

created, manufactured, caused to be manufactured, imported, marketed, distributed, displayed

and/or sold at least seven different products featuring designs identical or substantially similar to

the *Yes & No Moth Tarot Spinning Enamel Pin* Original Design (the "Shein *Yes & No Moth Tarot

Spinning Enamel Pin* Infringing Products") without authorization from Plaintiff.

94.    Below are side-by-side comparisons of the *Yes & No Moth Tarot Spinning Enamel

Pin* Original Design and the Shein *Yes & No Moth Tarot Spinning Enamel Pin* Infringing Products.

These comparisons make immediately apparent that the elements, compositions, arrangements,

layouts, renderings, designs, and appearances of the Shein *Yes & No Moth Tarot Spinning Enamel

Pin* Infringing Products are virtually identical to those of the *Yes & No Moth Tarot Spinning

Enamel Pin* Original Design.

| Original Design | Infringing Product |
|---|---|
| *Yes & No Moth Tarot Spinning Enamel Pin* | SKU: sj2311024421346232 |







*Detail of Infringing Product*

| Original Design | Infringing Product |
|---|---|
| *Yes & No Moth Tarot Spinning Enamel Pin* | SKU: sj2311063359482509 |
|  |  |

| Original Design | Infringing Product |
|---|---|
| *Yes & No Moth Tarot Spinning Enamel Pin* | SKU: sj2311063359408265 |
|  |  |

| Original Design | Infringing Product |
|---|---|
| *Yes & No Moth Tarot Spinning Enamel Pin* | SKU: sc2311018141591999 |
|  |  |

| Original Design | Infringing Product |
|---|---|
| *Yes & No Moth Tarot Spinning Enamel Pin*  | SKU: sk2311030230733932  |

| Original Design | Infringing Product |
|---|---|
| *Yes & No Moth Tarot Spinning Enamel Pin* | SKU: sc2311018141576601 |

| Original Design | Infringing Product |
|---|---|
| *Yes & No Moth Tarot Spinning Enamel Pin* | SKU: Unknown[6] |
|  |  |

<u>Unauthorized Reproductions of the *Rainbow Yes & No Moth Tarot Spinning Enamel Pin*</u>
<u>Original Design Displayed and Sold on the Shein Website and Shein Mobile App</u>

95.     To date, Plaintiff has discovered that Defendants Roadget, SDC, STC, and SUS created, manufactured, caused to be manufactured, imported, marketed, distributed, displayed and/or sold at least five different products featuring designs identical or substantially similar to the *Rainbow Yes & No Moth Tarot Spinning Enamel Pin* Original Design (the "*Shein Rainbow Yes & No Moth Tarot Spinning Enamel Pin* Infringing Products") without authorization from Plaintiff.

96.     Below are side-by-side comparisons of the *Rainbow Yes & No Moth Tarot Spinning Enamel Pin* Original Design and the Shein *Rainbow Yes & No Moth Tarot Spinning Enamel Pin* Infringing Products. These comparisons make immediately apparent that the elements, compositions, arrangements, layouts, renderings, designs, and appearances of the Shein *Rainbow Yes & No Moth Tarot Spinning Enamel Pin* Infringing Products are virtually identical to those of the *Rainbow Yes & No Moth Tarot Spinning Enamel Pin* Original Design.

| Original Design | Infringing Product |
|---|---|
| *Rainbow Yes & No Moth Tarot Spinning Enamel Pin* | SKU: sj2311063359482509 |
|  |  |

| Original Design | Infringing Product |
|---|---|
| *Rainbow Yes & No Moth Tarot Spinning Enamel Pin* | SKU: sj2311063359408265 |
|  |  |

| Original Design | Infringing Product |
|---|---|
| *Rainbow Yes & No Moth Tarot Spinning Enamel Pin* | SKU: sc2311018141591999 |
|  |  |

| Original Design | Infringing Product |
|---|---|
| *Rainbow Yes & No Moth Tarot Spinning Enamel Pin* | SKU: sk2311030230733932 |
|  |  |

| Original Design | Infringing Product |
|---|---|
| *Rainbow Yes & No Moth Tarot Spinning Enamel Pin* | SKU: sc2311018141576601 |
|  |  |

<u>Defendants' Attempts to Launch a "Marketplace" to Avoid Liability for Their Widespread
Intellectual Property Infringement</u>

97.    Beginning in May 2023, Defendants Roadget, SDC, STC, and SUS launched the

"Shein Marketplace," a new platform hosted on the Shein Website and Shein Mobile App that

supplements the Shein brand's direct-seller model by ostensibly allowing consumers to purchase

products from a select number of vetted third-party vendors. In reality, the newly created Shein

Marketplace is no different from the Shein Website's prior direct-seller model, and these third-

party vendors in practice function more as traditional wholesale suppliers.

98.    For example, at least one of the Shein *Social Battery Pin* Infringing Products, which

is supposedly sold by a third-party vendor on the Shein Marketplace, has the same SKU number,

product name, and product photos as the Emmacloth Infringing Product, which is sold directly by

Defendants Roadget and Fashion Choice on the Emmacloth Website under the Emmacloth brand.

This suggests that there is more at work here than simply rogue third-party vendors.

99.    Upon information and belief, the third-party vendors on the Shein Marketplace are

primarily Chinese manufacturers and suppliers, many of which are the same entities that supplied

Defendants Roadget, SDC, STC, and SUS with the products sold on the Shein Website and Shein

Mobile App prior to the launch of the Shein Marketplace in May 2023, and from which Defendants

Roadget, SDC, and Fashion Choice source the products sold on the Emmacloth Website and the

Romwe Website and Romwe Mobile App.

100.    Defendants Roadget, SDC, STC, and SUS exercise substantial control over the

third-party vendors and products sold on the Shein Marketplace.

101.    Defendants Roadget, SDC, STC, and SUS provide a wide array of financing,

onboarding, logistics, and other services to their third-party vendors that go well beyond traditional

marketplace services. Upon information and belief, Defendants Roadget, SDC, STC, and SUS

directly finance and invest in factories, infrastructure, and training, among other things, for the benefit of the third-party vendors on the Shein Marketplace. In June 2023, Defendants Roadget, SDC, STC, and SUS launched AcceleraSHEIN, an integrated support platform for third-party vendors that "offers a holistic system of support to all marketplace sellers throughout their journey on [Shein] Marketplace, including training and upskilling, seller benefits and incentives to help them achieve their business goals."[7]

102.    Defendants Roadget, SDC, STC, and SUS curate, select, and control which entities will be third-party vendors on the Shein Marketplace.

103.    Upon information and belief, Defendants Roadget, SDC, STC, and SUS curate, select, and control the products "designed" and sold by third-party vendors on the Shein Marketplace for the benefit of their customers, in much the same way they curate, select, and control the products that they themselves sell directly under the Shein brand.

104.    Defendants Roadget, SDC, STC, and SUS utilize a sophisticated web scraping technology and artificial intelligence-based software that scours the Internet and surveys their users' browsing habits, including on websites and mobile applications other than the Shein Website, the Shein Mobile App, the Romwe Website, the Romwe Mobile App, and the Emmacloth Website, to determine which products to source and sell on the Shein Marketplace.

105.    Upon information and belief, Defendants Roadget, SDC, STC, and SUS are involved in the creation and publication of the Shein Marketplace page on the Shein Website and

---

[7] SHEIN Launches 'AcceleraSHEIN' To Empower Marketplace Sellers, Continues Global Roll-Out of Integrated Marketplace, June 22, 2023, https://sheingroup.com/corporate-news/press-releases/shein-launches-accelerashein-to-empower-marketplace-sellers-continues-global-roll-out-of-integrated-marketplace/.

Shein Mobile App for each third-party vendor, including the selection and uploading of the images, designs, and other vendor information.

106.    Upon information and belief, Defendants Roadget, SDC, STC, and SUS are involved in the curation, selection, and publication of the third-party vendors' product pages and product photos on the Shein Website and the Shein Mobile App.

107.    It has been alleged in a recent lawsuit filed against Defendants Roadget and STC that third-party suppliers are required to grant the Shein brand "a worldwide, irrevocable, and exclusive license" to "publish, display, reproduce, improve, or otherwise use" the suppliers' products and related styles and to "transfer . . . the IP [intellectual property] rights in the images, photos, or videos of such products" to the Shein brand.

108.    Further, upon information and belief, after Defendants Roadget, SDC, STC, and SUS "select" an entity to be a third-party vendor, Defendants direct the third-party vendor to Defendants' own photography studio vendors to photograph the products for future publication on the Shein Website and Shein Mobile App.

109.    Upon information and belief, employees of Defendants Roadget, SDC, STC, and SUS utilize photograph editing software to prepare the product photos for publication on the Shein Website and Shein Mobile App.

110.    Upon information and belief, Defendants Roadget, SDC, STC, and SUS also provide third-party vendors with photograph editing software to prepare the product photos for publication on the Shein Website and Shein Mobile App.

111.    Upon information and belief, Defendants Roadget, SDC, STC, and SUS have an excessive degree of control in setting the prices of the products sold on the Shein Marketplace.

112.    Defendants Roadget, SDC, STC, and SUS exercise a substantial degree of control over the marketing and advertising of all products sold on the Shein Marketplace.

113.    Defendants Roadget, SDC, STC, and SUS exercise a significant degree of control and influence over the storage, warehousing, and distribution of the products sold on the Shein Marketplace (including through their centralized distribution centers in Guangdong Province, China).

114.    Defendants Roadget, SDC, STC, and SUS process the payments for all transactions completed on the Shein Website and Shein Mobile App, including the Shein Marketplace.

115.    Defendants Roadget, SDC, STC, and SUS exercise a substantial degree of control over customer service, returns, and refunds for all orders placed on the Shein Website and Shein Mobile App, including the Shein Marketplace.

116.    Upon information and belief, Defendants Roadget, SDC, STC, and SUS maintain data security services to protect consumers' personal and payment information for all orders placed on the Shein Website and Shein Mobile App, including the Shein Marketplace.

117.    Defendants Roadget, SDC, STC, and SUS are not simply "passive hosts" of the infringing products being sold on the Shein Marketplace but are instead integrally involved in every step of the creation, sourcing, display, and sale of the Shein Infringing Products, making them direct participants in the infringement.

118.    Any claim by Defendants Roadget, SDC, STC, and SUS that they are not responsible for infringing products sold on the Shein Marketplace is meritless and is merely the next iteration of Defendants' repeated attempts to evade liability for their orchestration of this massive infringement scheme.

119.    Defendants Roadget, SDC, STC, and SUS have directly financially benefited from displaying and selling the Shein Infringing Products on the Shein Website and Shein Mobile App. Defendants Roadget, SDC, STC, and SUS have directly financially benefited from the availability of and sales of the Shein Infringing Products on the Shein Marketplace.

120.    Defendants Roadget's, SDC's, STC's, and SUS's infringement of the Original Design has been willful. Defendants never attempted to contact Plaintiff to inquire about properly licensing the Original Designs and instead chose to produce, procure, and sell unauthorized, low-quality infringing copies of the designs.

121.    Defendants Roadget, SDC, STC, and SUS know they are selling cheap products from manufacturers, suppliers, and third-party vendors that regularly deal in infringing products but continue to do so without implementing any reasonable checks to prevent the continued flood of infringing goods into the United States and this District.

122.    Plaintiff has been forced to file this action to protect its rights and livelihood and to protect the integrity of its artwork.

**FIRST CLAIM FOR RELIEF**
**COPYRIGHT INFRINGEMENT - 17 U.S.C. § 501, et seq.**
**(Against All Defendants)**

123.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 122 above and incorporates them herein by reference.

124.    Plaintiff has complied in all respects with the copyright laws of the United States, 17 U.S.C. § 101 *et seq*., and has secured the exclusive rights and privileges in and to the copyrights in the Original Designs.

125.    Defendants had access to Plaintiff's Original Designs, including, without limitation, through (a) viewing the Original Designs on Plaintiff's website or social media; (b) viewing the Original Designs on an authorized third-party retailer's website or social media; and/or (c) purchasing products featuring the Original Designs from Plaintiff or an authorized third-party retailer.

126.    Defendants copied, reproduced, distributed, adapted, publicly displayed, and/or sold elements of the Original Designs without the consent, permission, or authority of Plaintiff.

127.    Defendants' conduct constitutes infringement of Plaintiff's copyrights and exclusive rights in violation of 17 U.S.C. §§ 106 and 501.

128.    Defendants' acts of infringement have been willful, intentional, purposeful, and/or in reckless disregard of and with indifference to Plaintiff's rights.

129.    Plaintiff is entitled to actual damages and Defendants' profits attributable to the infringement both in the United States and around the world, pursuant to 17 U.S.C. § 504.

130.    Alternatively, Plaintiff is entitled to an award of statutory damages for each of the Original Designs, pursuant to 17 U.S.C. § 504.

131.    Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to 17 U.S.C. § 505.

**SECOND CLAIM FOR RELIEF**
**CONTRIBUTORY COPYRIGHT INFRINGEMENT - 17 U.S.C. § 501, et seq.**
**(Against Defendants Roadget, SDC, STC, and SUS)**

132.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 131 above and incorporates them herein by reference.

133.    Defendants Roadget, SDC, STC, and SUS knew of the infringement of Plaintiff's copyrighted Original Designs on the Shein Website and the Shein Mobile App, including on the Shein Marketplace.

134.    Defendants Roadget, SDC, STC, and SUS unlawfully allowed, enabled, or otherwise facilitated the creation and distribution of the Shein Infringing Products.

135.    Defendants Roadget, SDC, STC, and SUS knowingly induced, caused, and/or materially contributed to the direct infringement of Plaintiff's copyrighted Original Designs.

136.    Plaintiff has been damaged by, and Defendants Roadget, SDC, STC, and SUS have profited and materially benefited from, the infringement of Plaintiff's copyrighted Original Designs.

137.    Plaintiff is entitled to the remedies set forth above for the copyright infringement of Plaintiff's copyrighted Original Designs.

**THIRD CLAIM FOR RELIEF**
**VICARIOUS COPYRIGHT INFRINGEMENT - 17 U.S.C. § 501, et seq.**
**(Against Defendants Roadget, SDC, STC, and SUS)**

138.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 137 above and incorporates them herein by reference.

139.    Defendants Roadget, SDC, STC, and SUS receive a direct financial benefit from the infringing activities occurring on the Shein Marketplace, including sales of the Shein Infringing Products.

140.    Defendants Roadget, SDC, STC, and SUS receive a direct financial benefit through the availability of the Shein Infringing Products and material on the Shein Marketplace, which acts as a draw for customers and results in sales and further profits and revenues to Defendants Roadget, SDC, STC, and SUS.

141.    Defendants Roadget, SDC, STC, and SUS have the right and ability to control and supervise the infringing activity of third-party vendors on the Shein Marketplace through the exercise of substantial control over the third-party vendors, the products displayed and sold, and the marketing and advertising of all products displayed and sold on the Shein Marketplace.

142.    Defendants Roadget, SDC, STC, and SUS have failed to exercise their right and ability to supervise or control the infringing activity occurring on the Shein Marketplace.

143.    Defendants Roadget, SDC, STC, and SUS have the ability to stop or limit the infringing activity occurring on the Shein Marketplace, as well as the practical ability to do so.

144.    Defendants Roadget, SDC, STC, and SUS have failed to stop or limit the infringing activity occurring on the Shein Marketplace.

145.    Plaintiff has been damaged by, and Defendants Roadget, SDC, STC, and SUS have profited and materially benefited from, the direct infringement of Plaintiff's copyrighted Original Designs.

146.    Plaintiff is entitled to the remedies set forth above for the copyright infringement of Plaintiff's copyrighted Original Designs.

**WHEREFORE**, Plaintiff demands judgment as follows:

1.    For an order permanently restraining and enjoining Defendants from copying, reproducing, distributing, adapting, publicly displaying, and/or selling the Original Designs or any elements thereof;

2.      For an order requiring the destruction of all of Defendants' infringing products, including the Emmacloth Infringing Products, Romwe Infringing Products, and Shein Infringing Products, and all marketing, advertising, or promotional materials depicting Defendants' infringing products;

3.      For an award of Plaintiff's actual damages in connection with Defendants' willful copyright infringement;

4.      For an award of all of Defendants' disgorged worldwide profits attributable to Defendants' copyright infringement;

5.      For an award of statutory damages for each of the Original Designs under the Copyright Act, 17 U.S.C. § 504(c), as well as attorneys' fees and costs under the Copyright Act, 17 U.S.C. § 505;

6.      For reasonable attorneys' fees and costs of suit incurred herein;

7.      For interest, including prejudgment interest, on the foregoing sums; and

8.      For such other and further legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in this action of all issues so triable.

Dated:    New York, New York
          May 8, 2024

Respectfully Submitted,

KUSHNIRSKY GERBER PLLC

By: _____
Andrew Gerber

Vanessa Sorrentino
andrew@kgfirm.com
vanessa@kgfirm.com
27 Union Square West, Suite 301
New York, NY 10003
(212) 882-1320
*Attorneys for Plaintiff Atelier Eumori*