**MERCHANT & GOULD P.C.**
Peter A. Gergely (NY Bar #5671458)
pgergely@merchantgould.com
500 Fifth Avenue, Suite 4100
New York, NY 10110
212.223.6520

Scott P. Shaw (*Pro Hac Vice*)
SShaw@Merchantgould.com
8383 Wilshire Blvd., Ste. 935
Beverly Hills, CA 90211
(949) 330-0202

Leighton Zhao (*Pro Hac Vice*)
lzhao@merchantgould.com
150 South Fifth Street, Suite 2200
Minneapolis, MN 55402
(612) 332-5300

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | : | |
| ATELIER EUMORI, | : | |
| | : | |
| *Plaintiff,* | : | Case No. 1:24-cv-3531 (VEC) |
| | : | |
| v. | : | |
| | : | |
| ROADGET BUSINESS PTE. LTD., a | : | |
| Singapore private limited company; | : | **DEFENDANTS'** |
| SHEIN DISTRIBUTION | : | **COUNTERSTATEMENT OF** |
| CORPORATION, a Delaware | : | **UNDISPUTED MATERIAL** |
| corporation; SHEIN US SERVICES, | : | **FACTS PURSUANT TO FED. R.** |
| LLC, a Delaware limited liability | : | **CIV. P. 56 and LOCAL CIVIL** |
| company; SHEIN TECHNOLOGY LLC, | : | **RULE 56.1** |
| a Delaware limited liability company; and | : | |
| FASHION CHOICE PTE. LTD., a | : | |
| Singapore private limited company, | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

1

Pursuant to Federal Rule of Civil Procedure 56 and Southern District of New York Local Rule 56.1, Defendants Roadget Business Pte. Ltd., Shein Distribution Corporation, Shein US Services LLC, Shein Technology LLC, and Fashion Choice Pte. Ltd. (collectively "Defendants"), by its attorneys Merchant & Gould P.C., submit this response to Plaintiff's Supplemental Statement of Material Facts in support of Defendants' Motion for Partial Summary Judgment and include Defendant's Supplemental Statement of Material Facts in Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment.

1.      Plaintiff Atelier Eumori ("Plaintiff") is a design company owned and operated by Calandra (Zhi Xin) Wong, an artist and illustrator based in Singapore. (Dkt. 1, ¶ 19.)

**Plaintiff's Response**: Admitted.

2.      In its Complaint, Plaintiff alleges Defendants have infringed five enamel pin designs: (i) the Social Battery Pin; (ii) the Mood Tracker Sliding Enamel Pin; (iii) the Caffeinated Status Coffee Sliding Enamel Pin; (iv) the Yes & No Moth Tarot Spinning Enamel Pin; (v) and the Rainbow Yes & No Moth Tarot Spinning Enamel Pin. (Dkt. 1, ¶ 31.)

**Plaintiff's Response**: Admitted.

3.      Of the five designs asserted, Plaintiff only alleges that one has been timely registered: the Social Battery Pin, U.S. Reg. No. VA 2-369-855, which has an effective date of August 2, 2023, and a publication date of April 28, 2023. (Dkt. 1, ¶ 32; Request for Judicial Notice ("RJN"), ¶ 1, Ex. N.)

**Plaintiff's Response**: Plaintiff admits that it alleges that the Social Battery Pin has been timely registered. Plaintiff admits that it obtained U.S. Reg. No. VA 2-369-855 for the Social Battery Pin, which has an effective registration date of August 2, 2023. Declaration of Vanessa Sorrentino (hereinafter, "Sorrentino Decl.") ¶ 4, Exhibit C. Plaintiff admits that the publication

date listed on U.S. Reg. No. VA 2-369-855 is April 28, 2023, but Plaintiff disputes that the Social

Battery Pin was indeed published on this day. Sorrentino Decl. ¶ 4, <u>Exhibit A</u> (Wong Day 1. Dep.

Tr. 19:6-7; 25:8-10; 74: 10-18); ¶¶ Sorrentino Decl. ¶¶ 6, 8, 10, 14, 16-18, <u>Exhibits E, G, M, O-Q</u>.

4.    Defendants made a U.S. sale of a product accused of infringing the Social Battery

Pin copyright as early as June 10, 2023. (*See* Dkt. 1, ¶ 86 (listing 152 SKUs as "Shein *Social*

*Battery Pin* Infringing Products"); *see also* Declaration of Scott Shaw ("Shaw Decl.") ¶ 2, Ex. B.)

**<u>Plaintiff's Response</u>**: Admitted, based on Defendants' representations that the sales data

they have produced is complete and accurate.

5.    Plaintiff alleges that it owns copyright registrations for the Mood Tracker Sliding

Enamel Pin, U.S. Reg. No. VA 2-394-891, the Caffeinated Status Coffee Sliding Enamel Pin, U.S.

Reg. No. VA 2-396-503, and the Yes & No Moth Tarot Spinning Enamel Pin, U.S. Reg. No. VA 2-

396-501 – all with effective dates of March 7, 2024 (RJN, ¶¶ 2-4, Exs. O-Q) – but Plaintiff is not

seeking statutory damages or attorneys' fees for the Mood Tracker Sliding Enamel Pin, the

Caffeinated Status Coffee Sliding Enamel Pin, or the Yes & No Moth Tarot Spinning Enamel Pin,

because Defendants sold allegedly infringing products prior to March 7, 2024. (Shaw Decl., ¶ 2,

Ex. B; RJN, ¶¶ 2-4, Exs. O-Q.)

**<u>Plaintiff's Response</u>**: Admitted, based on Defendants' representations that the sales data

they have produced is complete and accurate.

6.    In the final quarter of 2022, Ms. Wong sketched the design for the Social Battery

Pin, and later hand drew the two-dimensional design on her computer. (*See* Shaw Decl., ¶ 3, Ex.

C (Wong Day 1 Dep. Tr. at 68:11-14); Ex. D (Wong Day 2 Dep. Tr. at 117:12-118:16).)

**<u>Plaintiff's Response</u>**: Plaintiff admits that in 2022, Ms. Wong initially sketched the design

for the Social Battery Pin by hand on paper, and later hand drew the design on her computer using

a stylus. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 47:9, 18-19, 23); Sorrentino Decl. ¶ 3, <u>Exhibit B</u> (Wong Day 2 Dep. Tr. at 117:24-24; 118:2-16). Plaintiff disputes Defendants' characterization of the design as "two-dimensional," as Plaintiff obtained a copyright registration for its three-dimensional jewelry design. Sorrentino Decl. ¶¶ 4-5, <u>Exhibits C-D</u>.

7.    Ms. Wong submitted the two-dimensional computer design and specifications to a manufacturer to produce an initial production run of 100 Social Battery Pins (*i.e.,* 50 white pins and 50 black pins). (*Id.* at 118:17-119:1, 135:8-12.)

**<u>Plaintiff's Response</u>**: Plaintiff admits that Ms. Wong submitted the design and specifications to a manufacturer to produce an initial production run of 100 Social Battery Pins. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 63:25; 64:1-2; 68:7-14). Plaintiff disputes Defendants' characterization of the design as "two-dimensional," as Plaintiff obtained a copyright registration for its three-dimensional jewelry design. Sorrentino Decl. ¶¶ 4-5, <u>Exhibits C-D</u>.

8.    Ms. Wong did not receive an assignment of rights from the manufacturer of the three-dimensional Social Battery Pin, and Ms. Wong did not have any written agreement with the manufacturer regarding ownership of copyrights. (*Id.* at 119:2-120:23.)

**<u>Plaintiff's Response</u>**: Plaintiff admits that there were no written agreements between Ms. Wong and the manufacturer, as none were required.

9.    When Ms. Wong received the first 100 Social Battery Pins from the manufacturer, she took photographs and videos of them. (*See* Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 73:5-74:1).)

**<u>Plaintiff's Response</u>**: Admitted.

10.   In or around April 26-28, 2023, Mr. [sic] Wong paid to have photographs and videos posted on Instagram and Facebook, and engaged in organic social media and online marketing and

promotion on TikTok, YouTube, and Twitter/X. (*See* Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 27:14-25; 38:6-8).)

**Plaintiff's Response**: Plaintiff admits that on or around April 26-28, 2023, Plaintiff made various posts on the social media platforms Instagram, Facebook, TikTok, YouTube, and Twitter/X, which Ms. Wong characterized as "organic posting on social media." Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. 21:24-25; 23:12-13); Sorrentino Decl. ¶¶ 6, 8, 10, 14, 16-18, Exhibits E, G, M, O-Q. Plaintiff admits that Ms. Wong paid Meta in connection with some of the Instagram and Facebook posts. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. 23:16-25; 24: 4-6).

11.    The purpose of her posting photographs and videos of the Social Battery Pin on April 28, 2023, was to market and promote the pins so that prospective customers would purchase them. (*Id.* at 78:4-12; Shaw Decl., ¶ 3, Ex. D (Wong Day 2 Dep. Tr. at 135:13-18).

**Plaintiff's Response**: Plaintiff disputes Defendants' characterization that "[t]he purpose of [Ms. Wong] posting photographs and videos of the Social Battery Pin on April 28, 2023, was to market and promote the pins so that prospective customers would purchase them." Instead, Plaintiff posted photographs and videos of the Social Battery Pin and Plaintiff's other original, interactive enamel pins on social media to increase "brand awareness" and so people would follow Plaintiff's Kickstarter prelaunch page. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 28:10-14, 30:2-7, 79:8-25; 80:1-3; 83:15-22).

12.    Individually and collectively, the Instagram, Facebook, TikTok, YouTube, and Twitter/X are large platforms that reach a public audience of likely over billions of viewers. (*See* Shaw Decl., ¶¶ 6, 8, 10-11, Exs. G, I, K, L [the relevant text quoted in the Memorandum of Law is highlighted in the Exhibits for the Court's convenience]; RJN, ¶¶ 5-8).

**Plaintiff's Response**: Plaintiff admits that Instagram, Facebook, TikTok, YouTube, and Twitter/X are large platforms used by many people. Plaintiff can neither confirm nor deny Defendants' contention that these platforms "reach a public audience of likely over billions of viewers."

13.     On April 26, 2023, Ms. Wong posted a picture of the Social Battery Pin on Instagram to promote and market it to prospective purchasers, which went "viral." (*See* Shaw Decl., ¶ 4, Ex. E.; Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 16:9-18:7; 28:4-8; Shaw Decl., ¶ 3, Ex. D (Wong Day 2 Dep. Tr. at 126:7-129:16.) Her Instagram posts included a reference to the Kickstarter campaign in the caption: "The Social Battery Pin is now launched on Kickstarter! Link in bio." (Shaw Decl., ¶ 4, Ex. E.) Ms. Wong's Instagram posts also included a hashtag that read "#enamelpinsforsale" that she inserted. (*Id.*)

**Plaintiff's Response**: Plaintiff admits that on April 26, 2023, Plaintiff posted an Instagram "Reels" video displaying the Social Battery Pin to its Instagram account. *See* Shaw Decl. ¶ 4, Exhibit E [ECF No. 60-5 at 3]. Plaintiff disputes Defendants' characterization that Plaintiff made this post "to promote and market [the pin] to prospective purchasers." Instead, Plaintiff posted photographs and videos of the Social Battery Pin and Plaintiff's other original, interactive enamel pins on social media to increase "brand awareness" and so people would follow Plaintiff's Kickstarter prelaunch page. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 28:10-14, 30:2-7, 79:8-25; 80:1-3; 83:15-22). Plaintiff does not dispute that its products "went viral" on social media. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 17:18-25, 18:1). Plaintiff admits that the videos it posted on TikTok and Instagram had the most views. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 28:7-8). Plaintiff admits that it posted the same video on different social media platforms around the same time. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day

6

1 Dep. Tr. at 17:23-24). Plaintiff admits that her April 26, 2023 Instagram "Reels" video had the caption, "This pin will be part of my Interactive Enamel Pin Kickstarter, launching on 12 May 9 am EST/9pm SGT!" *See* Shaw Decl. ¶ 4, Exhibit E [ECF No. 60-5 at 3]. Plaintiff admits that this caption also included a hashtag reading "#enamelpin #enamelpins #enamelpinsforsale." *Id.* Plaintiff admits that on April 28, 2023, Plaintiff posted another Instagram "Reels" video displaying the Social Battery Pin on its Instagram account. *See* Shaw Decl. ¶ 4, Exhibit E [ECF No. 60-5 at 2]; Sorrentino Decl. ¶ 6, Exhibit E. Plaintiff admits that it edited the caption of this post on May 12, 2023 to read, "The Social Battery pin is now launched on Kickstarter! Link in bio. I'm the original artist of this pin." *Id.*

14.    On April 28, 2023, Ms. Wong posted a video on Facebook to promote the Social Battery Pin and market it to prospective purchasers. The Facebook short video shows the Social Battery Pins that Ms. Wong's manufacturer sent her in 2022. It also shows a comment from a prospective purchaser asking, "when do you launch". (*See* Shaw Decl., ¶ 3, Ex. D (Wong Day 2 Dep. Tr. at 124:12-126:16); Shaw Decl., ¶ 5, Ex. F.)

**Plaintiff's Response**: Plaintiff admits that on April 28, 2023, Plaintiff posted a Facebook "Reels" video displaying the Social Battery Pin on its Facebook account. *See* Shaw Decl. ¶ 5, Exhibit F [ECF No. 60-6 at 2]; Sorrentino Decl. ¶ 16, Exhibit O. Plaintiff disputes Defendants' characterization that it made this post "to promote and market it to prospective purchasers." Instead, Plaintiff posted photographs and videos of the Social Battery Pin and Plaintiff's other original, interactive enamel pins on social media to increase "brand awareness" and so that people would follow Plaintiff's Kickstarter prelaunch page. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 28:10-14, 30:2-7, 79:8-25; 80:1-3; 83:15-22). Plaintiff admits that a person commented

on this video, "When do you launch???" *See* Shaw Decl. ¶ 5, <u>Exhibit F</u> [ECF No. 60-6 at 2]; Sorrentino Decl. ¶ 16, <u>Exhibit O</u>.

15.    On April 28, 2023, Ms. Wong posted a video of the Social Battery Pin on TikTok video to promote and market it to prospective purchasers, which went "viral." (*See* Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 16:9-18:7; 28:4-8); Shaw Decl., ¶¶ 7-8, Exs. H-I.)

**Plaintiff's Response**: Plaintiff admits that on April 28, 2023, Plaintiff posted a video displaying the Social Battery Pin on its TikTok account. *See* Shaw Decl. ¶ 7, <u>Exhibit H</u> [ECF No. 60-8 at 2]; Sorrentino Decl. ¶ 17, <u>Exhibit P</u>. Plaintiff disputes Defendants' characterization that it made this post "to promote and market it to prospective purchasers." Instead, Plaintiff posted photographs and videos of the Social Battery Pin and Plaintiff's other original, interactive enamel pins on social media to increase "brand awareness" and so people would follow Plaintiff's Kickstarter prelaunch page. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 28:10-14, 30:2-7, 79:8-25; 80:1-3; 83:15-22). Plaintiff does not dispute that its products "went viral" on social media. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 17:18-25, 18:1). Plaintiff admits that the videos it posted on TikTok and Instagram had the most views. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 28:7-8).

16.    On April 28, 2023, posted a video on YouTube to promote the Social Battery Pin and market it to prospective purchasers. (*See* Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 27:14-25); Shaw Decl., ¶ 3, Ex. D (Wong Day 2 Dep. Tr. at 139:6-140:12, 142:18-143:16); Shaw Decl., ¶ 9, Ex. J.)

**Plaintiff's Response**: Plaintiff admits that Plaintiff posted a video displaying the Social Battery Pin on its YouTube account. *See* Shaw Decl. ¶ 9, <u>Exhibit J</u> [ECF No. 60-6 at 2]; Sorrentino Decl. ¶ 13, <u>Exhibit L</u>. Plaintiff cannot confirm or deny that this video was posted on April 28, 2023

because the date is not shown on Shaw Decl. ¶ 9, <u>Exhibit J</u> [ECF No. 60-6 at 2]. Plaintiff disputes Defendants' characterization that it made this post "to promote and market it to prospective purchasers." Instead, Plaintiff posted photographs and videos of the Social Battery Pin and Plaintiff's other original, interactive enamel pins on social media to increase "brand awareness" and so people would follow Plaintiff's Kickstarter prelaunch page. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 28:10-14, 30:2-7, 79:8-25; 80:1-3; 83:15-22).

17.     On April 28, 2023, Ms. Wong posted the Social Battery Pin on Twitter/X to promote and market it to prospective purchasers. (*See* Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 27:14-25); Shaw Decl., ¶ 12, Ex. M.)

**<u>Plaintiff's Response</u>**: Plaintiff admits that on April 28, 2023, Plaintiff posted an image displaying the Social Battery Pin, in addition to Plaintiff's other original, interactive pins, on its Twitter/X account. *See* Shaw Decl. ¶ 12, <u>Exhibit M</u> [ECF No. 60-12 at 2]; Sorrentino Decl. ¶ 18, <u>Exhibit Q</u>. Plaintiff disputes Defendants' characterization that Plaintiff did this "to promote and market it to prospective purchasers." Instead, Plaintiff posted photographs and videos of the Social Battery Pin and Plaintiff's other original, interactive enamel pins on social media to increase "brand awareness" and so people would follow Plaintiff's Kickstarter prelaunch page. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 28:10-14, 30:2-7, 79:8-25; 80:1-3; 83:15-22).

18.     On May 12, 2023, Plaintiff launched a Kickstarter campaign for the Social Battery Pin. Kickstarter allows people to pledge money in exchange for receiving a free product. Ms. Wong set a monetary goal of how much money she was seeking to raise for the Social Battery Pin, and within four minutes, she reached her goal, which she says was "a stroke of luck." (*See* Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 31:8-34:25, 79:8-13, 90:4-21).)

**Plaintiff's Response**: Plaintiff admits that on May 12, 2023, Plaintiff launched a Kickstarter campaign titled "Interactive Enamel Pins," which included the Social Battery Pin in addition to various other original, interactive enamel pins. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 19:6-7; 25:8-10); Sorrentino Decl. ¶¶ 6, 8, 10, 14, 16-18, Exhibits E, G, M, O-Q. Plaintiff disputes Defendants' characterization that, "Kickstarter allows people to pledge money in exchange for receiving a free product." Kickstarter is a crowd-funding website, in which people can "back" or "pledge" money to a creative project. Sorrentino Decl. ¶ 9-10, Exhibits H-I; Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 31:12-18). The project creator sets a funding goal, which is the amount needed to complete the project, and if the project is fully funded at the end of the fundraising period, then at that time the backers will be "charged," and the money will be released to the creator. Sorrentino Decl. ¶¶ 10-11, Exhibit I-J; Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 33:23-25; 34:7-12). At some time thereafter the creator will begin to ship "rewards" – which are frequently tangible copies of the creative work being produced – to backers. Sorrentino Decl. ¶¶ 9-10, Exhibits H-I. Plaintiff admits that she set a monetary goal of how much money she was seeking to raise for the Social Battery Pin and reached this goal within four minutes of the Kickstarter campaign launching. *See* Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 31:25; 34:7-15). Plaintiff admits that Ms. Wong characterized reaching the goal in four minutes as "a stroke of luck." *See* Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 34:24).

19.    The Social Battery Pins that Plaintiff sold on May 12, 2023, were the same ones that she purchased in late 2022 from her manufacturer. No design changes were made. (*See* Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 71:25-72:6, 73:5-74:1).)

**<u>Plaintiff's Response</u>**: Plaintiff admits that it distributed ninety-nine of the 100 pins that Plaintiff ordered from its manufacturer in the last quarter of 2022 to the backers of its Kickstarter campaign. *See* Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 73:16-25; 74:1); ¶ 3, <u>Exhibit B</u> (Wong Day 2 Dep. Tr. at 125:19-25; 126:2-5). Plaintiff admits that no changes were made to the design of the Social Battery Pin after receiving the 100 pins from the manufacturer. *See* Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 70:3-5).

20.     Prior to May 12, 2023, the Social Battery Pins were offered for sale by Plaintiff on a pre-order basis. The only difference between the pre-order pledges "backing [Plaintiff's] product" and a regular sale is that the pre-order pledges have the ability to cancel their order during the Kickstarter campaign period. However, over fifty percent of the pre-order pledges were honored by final purchases of the pin prototypes by consumers. (*Id.* at 87:17-88:5, 90:24-91:3.)

**<u>Plaintiff's Response</u>**: Plaintiff disputes that the Social Battery Pin was offered for sale by Plaintiff on a pre-order basis prior to May 12, 2023. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 32:3-20; 74:2-4). The Kickstarter campaign was launched on May 12, 2023. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 19:6-7; 25:8-10); Sorrentino Decl. ¶¶ 6, 8, 10, 14, 16-18, <u>Exhibits E, G, M, O-Q</u>. This was the first opportunity that anyone could obtain Plaintiff's Social Battery Pin. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 32:3-20; 74:2-4). The Kickstarter campaign remained open until May 26, 2023. Sorrentino Decl. ¶ 8, <u>Exhibit G</u>. Backers of the Kickstarter campaign could technically cancel their "pledges" before the campaign ended. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 31:12-17); Sorrentino Decl. ¶ 13, <u>Exhibit L</u>. "Rewards," including copies of the Social Battery Pin, did not ship out to backers until the campaign ended on May 26, 2023. *Id.; see also* Sorrentino Decl. ¶ 9, <u>Exhibit H</u>. Plaintiff admits

that less than fifty percent of backers cancelled their pledges between May 12, 2023 and May 26, 2023. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 90:18-25, 91:1-3).

21.    On August 2, 2023, Ms. Wong filed a copyright application for the Social Battery Pin and with her application, she submitted a photograph of the Social Battery Pin that she took from the initial production run of 100 pins that her manufacturer made for her.  (*See* Shaw Decl., ¶ 3, Ex. D (Wong Day 2 Dep. Tr. at 121:13-17; Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 69:13-18.)

**Plaintiff's Response**: Plaintiff admits that the deposit copy submitted with its application to register the copyright in the Social Battery Pin with the U.S. Copyright Office is a photograph of the Social Battery Pin that Ms. Wong took after receiving the initial set of 100 pins that she ordered from the manufacturer. *See* Sorrentino Decl. ¶ 3, <u>Exhibit B</u> (Wong Day 2 Dep. Tr. at 121:13-17); Sorrentino Decl. ¶¶ 4-5, <u>Exhibits C-D</u>.

22.    In her copyright application, she represented to the Copyright Office that the Social Battery pin was published on April 28, 2023. (RJN, ¶ 1, Ex. N.)

**Plaintiff's Response**: Plaintiff admits that in its application to register the copyright in the Social Battery Pin with the U.S. Copyright Office, Plaintiff listed April 28, 2023 as the "publication date." Sorrentino Decl. ¶ 4, <u>Exhibit C</u>.

23.    During the December 8 deposition of Ms. Wong, she stated that the April 28, 2023, publication date listed on the Certification of Registration for the Social Battery Pin was a "mistake." (Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 74:10-18).)

**Plaintiff's Response**: Plaintiff admits that Ms. Wong stated during her December 8, 2024 deposition, "I think I made a mistake with that [publication] date." Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 74: 18).

24.     In her deposition on February 17, 2025, Plaintiff admitted that she has done nothing to correct the alleged mistake. (Shaw Decl., ¶ 3, Ex. D (Wong Day 2 Dep. Tr. at 121:21-122:20).)

**<u>Plaintiff's Response</u>**: Plaintiff admits that it notified Defendants and the Court about the incorrect publication date. *See* ECF No. 45.

25.     Plaintiff has not supplemented Rule 26 Disclosures or filed a Supplementary Copyright Registration to correct any purported errors in the Certification of Registration for the Social Battery pin. (*See* Shaw Decl., ¶ 13.)

**<u>Plaintiff's Response</u>**: Plaintiff admits that although it has not yet supplemented its Rule 26 Disclosures or filed a Supplementary Copyright Registration, Plaintiff intends to do so consistent with the Court's resolution of the parties' cross-motions.

## PLAINTIFF'S SUPPLEMENTAL STATEMENT OF MATERIAL FACTS

26.     In 2022, Ms. Wong created the original work titled Social Battery Pin. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 68:3-14).

**Defendants' Response**: Defendants deny the Social Battery Pin is an original work. Defendants admit that Ms. Wong testified that she originally hand drew the Social Battery Pin and later drew the Social Battery Pin design on her computer. (See Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 68:11-14); Ex. D (Wong Day 2 Dep. Tr. at 117:12-118:16).) For the purposes of this motion, Defendants do not challenge the fact that Ms. Wong created the design.

27.     The Social Battery Pin is a three-dimensional enamel pin that contains hand-drawn original illustrations of numerous facial expressions and moods along with the words "MY SOCIAL BATTERY." Sorrentino Decl. ¶ 5, Exhibit D.

**Defendants' Response**: Denied to the extent the term "Social Battery Pin" is being used to refer to the copyright. The copyright constitutes the design of the Social Battery Pin, not the three-dimensional enamel pin itself. Specifically, the copyright constitutes the "pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the [pin]." 17 U.S.C. § 101. Admitted to the extent the term "Social Battery Pin" is being used to refer to the physical pin rather than the copyright, except to the extent Plaintiff characterizes the facial expressions and moods as "original."

28.     The Social Battery Pin also includes an interactive hand-drawn lightning bolt slider that wearers of the pin can move to express or entertain themselves. Sorrentino Decl. ¶ 5, Exhibit D.

**Defendants' Response**: Admitted, except to the extent Plaintiff characterizes the facial expressions and moods as "original."

29.    Ms. Wong illustrated and designed all elements of the Social Battery Pin, including the shape of the pin and the interactive elements. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 47:9, 18-19, 23).

**<u>Defendants' Response</u>**:  Defendants deny that the shape of the Social Battery Pin, which is of a battery, constitutes a protectible element of the pin. Defendants admit that Ms. Wong testified that she originally hand drew the Social Battery Pin and later drew the Social Battery Pin design on her computer. (See Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 68:11-14); Ex. D (Wong Day 2 Dep. Tr. at 117:12-118:16).) For the purposes of this motion, Defendants do not challenge the fact that Ms. Wong created the design.

30.    Ms. Wong initially sketched the design for the Social Battery Pin by hand on paper. Sorrentino Decl. ¶ 3, <u>Exhibit B</u> (Wong Day 2 Dep. Tr. at 117:12-24).

**<u>Defendants' Response</u>**:  Admitted that this is Plaintiff's testimony. Although Defendants lack sufficient knowledge to admit or deny this fact, it is not disputed for the purpose of this motion.

31.    Ms. Wong later hand drew the design on her computer using a stylus. Sorrentino Decl. ¶ 3, <u>Exhibit B</u> (Wong Day 2 Dep. Tr. at 117:24-24; 118:2-16).

**<u>Defendants' Response</u>**:  Admitted that this is Plaintiff's testimony. Although Defendants lack sufficient knowledge to admit or deny this fact, it is not disputed for the purpose of this motion.

32.    During the "last quarter of 2022," once the design was complete, Ms. Wong submitted a test order of 100 pins to her manufacturer.  Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 63:25; 64:1-2; 68:7-14).

**Defendants' Response**:  Admitted that this is Plaintiff's testimony. Although Defendants lack sufficient knowledge to admit or deny this fact, it is not disputed for the purpose of this motion.

33.     Ms. Wong decided to start a Kickstarter project in connection with her new line of interactive enamel pins, including the Social Battery Pin. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 18:14-15).

**Defendants' Response**:  Admitted that this is Plaintiff's testimony. Although Defendants lack sufficient knowledge to admit or deny this fact, it is not disputed for the purpose of this motion.

34.     Kickstarter is a crowd-funding website, in which people can "back" or "pledge" money to a creative project. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 31:12-18); Sorrentino Decl. ¶ 9-10, Exhibits H-I.

**Defendants' Response**:  Admitted.

35.     The project creator sets a funding goal or "target," which is the amount needed to complete the project. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 33:23-25; 34:7-12); Sorrentino Decl. ¶ 10, Exhibit I.

**Defendants' Response**:  Admitted that the project creator sets a funding goal or "target," but denied as vague as to whether this is "the amount needed to complete the project."

36.     If the project is fully funded at the end of the fundraising period, then at that time the backers will be "charged," and the money will be released to the creator. Sorrentino Decl. ¶ 11, Exhibit J.

**Defendants' Response**:  Admitted.

37.    At some time thereafter the creator will begin to ship "rewards" – which are frequently tangible copies of the creative work being produced – to backers. Sorrentino Decl. ¶¶ 9-10, <u>Exhibits H-I</u>.

**Defendants' Response**:  Admitted, except to the extent this fact implies that digital copies of a creative work are not "fixed" in a tangible medium of expression.

38.    If the project does not reach its funding goal, then backers are not "charged," the creator does not receive any money, and the entire project is effectively cancelled. Sorrentino Decl. ¶ 11, <u>Exhibit J</u>.

**Defendants' Response**:  Admitted but immaterial because the Social Battery Pin was published before the May 12, 2023.

39.    It is not possible to "back" a project before it is launched. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 84:19-25; 86:15-18); Sorrentino Decl. ¶ 12, <u>Exhibit K</u>.

**Defendants' Response**:  Admitted to the extent the term "back" specifically refers to "pledging" money to the project on Kickstarter. Otherwise, denied as vague because backers can "back" a project outside of the Kickstarter platform or in nonmonetary ways. Furthermore, this fact is immaterial because the Social Battery Pin was published before the May 12, 2023.

40.    At any time between when a project launches and ends, backers can also cancel their pledge. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 31:13-17); Sorrentino Decl. ¶ 13, <u>Exhibit L</u>.

**Defendants' Response**:  Admitted but immaterial because the Social Battery Pin was published before the May 12, 2023.

41.     Plaintiff's Kickstarter project was the first channel via which the public could obtain a copy of the Social Battery Pin. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 32:7-20); Sorrentino Decl. ¶ 3, Exhibit B (Wong Day 2 Dep. Tr. at 138: 5-8).

**Defendants' Response**:  Denied. The public could obtain copies of the Social Battery Pin before the Kickstarter project launched, including by obtaining digital copies of the Social Battery Pin on Instagram, Facebook, TikTok, YouTube, and Twitter/X.

42.     On or around April 28, 2023, Plaintiff created the prelaunch page for this Kickstarter project. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 85:1-4).

**Defendants' Response**:  Admitted.

43.     The prelaunch page provided some information about the project and the pins, including a "hidden image and a title." Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 84:21-25; 85:7-11); Sorrentino Decl. ¶ 12, Exhibit K.

**Defendants' Response**:  Admitted that the prelaunch page provided some information about the Kickstarter project and the pins, including the Social Battery Pin. Denied as vague regarding the meaning of "hidden image and title."

44.     The purpose of the prelaunch page was to allow people to follow Plaintiff's project and get notified when the project launched. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 84:21-25; 85:7-11; 86:15-18); Sorrentino Decl. ¶ 12, Exhibit K.

**Defendants' Response:** Defendants deny that the sole purpose of the Kickstarter prelaunch page was to allow people to follow Plaintiff's project and get notified when the project launched, but also to promote and market the product to prospective purchasers and to generate interest in funding the Kickstarter. (*See* Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 78:4-12); Shaw Decl., ¶ 3, Ex. D (Wong Day 2 Dep. Tr. at 135:13-18). Furthermore, this fact is immaterial because

the Social Battery Pin was published on or before April 28, 2023, irrespective of the Plaintiff's

subjective purpose for the Kickstarter prelaunch.

45.     People could not "back" the project by "pledging" money until the project was

officially launched on May 12, 2023. Sorrentino Decl. ¶ 12, Exhibit K.

**Defendants' Response**: Admitted but immaterial because the Social Battery Pin was

published before the May 12, 2023.

46.     On April 28, 2023, Plaintiff also posted photographs and videos of the Social

Battery Pin on its social media accounts, including Instagram, Facebook, X (formerly known as

Twitter), TikTok, and YouTube. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. 21:24-25;

23:12-13); Sorrentino Decl. ¶¶ 6, 8, 10, 14, 16-18, Exhibits E, G, M, O-Q.

**Defendants' Response**: Admitted, except to the extent that this paragraph implies posting

photographs and videos on social media does not constitute distribution of the same. On April 28,

2023, each of these platforms had terms of service and/or use that required all users posting content

to grant licenses to that content, including the right to redistribute, to each respective social media

platform, as well as to other platform users, in some cases. (*See* Defendants' Request for Judicial

Notice in support of Reply ("Reply RJN"), Exs. N-R.)  For instance, a necessary feature of using

the X (formerly Twitter) platform is to allow users to "re-tweet," or recirculate, a post. (*Id.*) As can

be seen in the screenshots of Plaintiff's social media posts, users have buttons at their disposal to

bookmark (or save), as well as "share" posts, both internally within the platform and externally.

(Sorrentino Decl., Ex. P (Instagram post including buttons for direct messaging in platform,

sharing onto Facebook, as well as via text message link).)  On Facebook Reels, Plaintiff's own

evidence demonstrates that her Social Battery Pin post had been "shared," or sent from one user

to another, 12 times as of the date of production. (Sorrentino Decl., Ex. O.) Through the everyday

use of these social media platforms, each post comes with a license and has the potential to be re-posted, sent in a direct message, or otherwise recirculated by the platform itself as well as its users. (Reply RJN, Exs. S-W.)

47.    Plaintiff posted these photographs and videos for the purpose of raising "brand awareness" and encouraging people to follow the Kickstarter prelaunch page. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 28:10-14, 30:2-7, 79:8-25; 80:1-3; 83:15-22).

**Defendants' Response**: Defendants deny that Plaintiff posted these photographs and videos for the sole purpose of raising brand awareness and encouraging people to follow the Kickstarter prelaunch page, but also to market and promote the pins so that prospective customers would purchase them. (*See* Shaw Decl., ¶ 3, Ex. C (Wong Day 1 Dep. Tr. at 78:4-12); Shaw Decl., ¶ 3, Ex. D (Wong Day 2 Dep. Tr. at 135:13-18). Furthermore, this fact is immaterial because the Social Battery Pin was published on or before April 28, 2023, irrespective of the Plaintiff's subjective purpose for the posts.

48.    In the captions of these various social media posts, Plaintiff urged people to follow the prelaunch page, explaining that the Kickstarter would launch on May 12, 2023. Sorrentino Decl. ¶¶ 6, 8, 10, 14, 16-18, Exhibits E, G, M, O-Q.

**Defendants' Response**: Admitted.

49.    Plaintiff edited the caption of its April 28, 2023 Instagram "Reels" post on May 12, 2023 to read, "The Social Battery pin is now launched on Kickstarter! Link in bio. I'm the original artist of this pin." Sorrentino Decl. ¶ 6, Exhibit E.

**Defendants' Response**: Admitted that the Instagram post was edited on May 12, 2023, such that the caption read "The Social Battery pin is now launched on Kickstarter! Link in bio.

I'm the original artist of this pin" from May 12, 2023 to present. However, the evidence proffered by Plaintiff does not indicate what portions of the caption were changed.

50.    On May 12, 2023, Plaintiff launched the Kickstarter project. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 19:6-7; 25:8-10); Sorrentino Decl. ¶¶ 6, 8, 10, 14, 16-18, Exhibits E, G, M, O-Q.

**Defendants' Response**: Admitted but immaterial because the Social Battery Pin was published before the May 12, 2023.

51.    Once it launched, Plaintiff's Kickstarter campaign was "fully backed" in four minutes. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 31:25; 34:7-15).

**Defendants' Response**: Admitted but immaterial because the Social Battery Pin was published before the May 12, 2023.

52.    Plaintiff ultimately distributed ninety-nine of the 100 pins that it obtained from its first manufacturing order to its Kickstarter project backers once the project was fully funded. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 73:16-25; 74:1); ¶ 3, Exhibit B (Wong Day 2 Dep. Tr. at 125:19-25; 126:2-5).

**Defendants' Response**: Admitted that this is Plaintiff's testimony. Although Defendants lack sufficient knowledge to admit or deny this fact, it is not disputed for the purpose of this motion. Furthermore, this fact is immaterial because the Social Battery Pin was published before the physical pins were delivered.

53.    At the end of May 2023, after Plaintiff launched its Kickstarter, Plaintiff also posted images of the Social Battery Pin to its website so that customers could pre-order copies of the pin via another channel. Sorrentino Decl. ¶ 2, Exhibit A (Wong Day 1 Dep. Tr. at 32:13-14); Sorrentino Decl. ¶¶ 7, 14-15, Exhibits F, M-N.

**Defendants' Response**: Admitted but immaterial because the Social Battery Pin was published before the end of May 2023.

54.    No one was able to order or pre-order the Social Battery Pin prior to May 12, 2023 via Kickstarter or any other channel. Sorrentino Decl. ¶ 2, <u>Exhibit A</u> (Wong Day 1 Dep. Tr. at 32:7-20; 74:2-4); Sorrentino Decl. ¶ 3, <u>Exhibit B</u> (Wong Day 2 Dep. Tr. at 138: 5-8).

**Defendants' Response**: Admitted but immaterial because the Social Battery Pin was published before the end of May 2023.

55.    On May 7, 2023, a YouTube user @ronmorey1246 left the following comment on Plaintiff's YouTube video: "I love the "My Social Battery" pin. How much are they because I would love to give them out to everyone in the family for Christmas." Sorrentino Decl. ¶¶ 14-15 3, <u>Exhibit M-N</u>.

**Defendants' Response**: Admitted but immaterial because the Social Battery Pin was published on or before the April 28, 2023.

56.    On June 28, 2023, Plaintiff responded to the comment left by YouTube user @ronmorey1246: "Hi Ron! Thank you so much for the enquiry. They are USD$23. You can preorder it here: https://www.ateliereumori.com/product/second-preorder-the-original-social-battery-sliding-enamel-pin-black-and-white." Sorrentino Decl. ¶¶ 10-11 3, <u>Exhibit I-J.</u>

**Defendants' Response**: Admitted but immaterial because the Social Battery Pin was published on or before the April 28, 2023.

57.    On August 2, 2023, Plaintiff obtained U.S. Copyright Registration No. VA0002369855 for the Social Battery Pin. Sorrentino Decl. ¶¶ 14-15, <u>Exhibit M-N</u>.

**Defendants' Response**: Admitted.

58.    The original work of authorship protected by U.S. Copyright Registration No. VA0002369855 is "jewelry design." Sorrentino Decl. ¶¶ 4-5, <u>Exhibits C-D</u>.

**Defendants' Response**: Defendants deny that the design of U.S. Copyright Registration No. VA0002369855 is an original work of authorship. Defendants admit that U.S. Copyright Registration No. VA0002369855 is for a "jewelry design" but deny that this registration covers any elements of the Social Battery Pin that are not visible in the photograph submitted as the deposit to the Copyright Office.

## DEFENDANTS' SUPPLEMENTAL STATEMENT OF MATERIAL FACTS

59.    On April 28, 2023, Instagram, Facebook, Twitter/X, TikTok, and YouTube each had terms of service and/or use that required all users posting content to grant licenses to that content, including the right to redistribute, to each respective social media platform, as well as to other platform users, in some cases. (*See* Reply RJN, Exs. N-R.)  For instance, a necessary feature of using the X (formerly Twitter) platform is to allow users to "re-tweet," or recirculate, a post. (*Id.*)

60.    As can be seen in the screenshots of Plaintiff's social media posts, users have buttons at their disposal to bookmark (or save), as well as "share" posts, both internally within the platform and externally. (Sorrentino Decl., Ex. P (Instagram post including buttons for direct messaging in platform, sharing onto Facebook, as well as via text message link).)  On Facebook Reels, Plaintiff's own evidence demonstrates that her Social Battery Pin post had been "shared," or sent from one user to another, 12 times as of the date of production. (Sorrentino Decl., Ex. O.)

61.    Through the everyday use of Instagram, Facebook, Twitter/X, TikTok, and YouTube, each post or upload comes with a license and has the potential to be re-posted, sent in a direct message, or otherwise recirculated by the platform itself as well as its users. (Reply RJN, Exs. S-W.)

62.    The deposit copy of the Social Battery Pin (left) depicts the same copyrightable elements of the Social Battery Pin, if any, as the screenshots from the video of the Social Battery Pin posted on Facebook Reels on April 28, 2023 (right). This video is identical (other than the background music) to the videos posted on Instagram Reels and on TikTok on April 28, 2023.

 

(Sorrentino Decl., ¶ 5, Ex. D; Declaration of Scott P. Shaw in Support of Summary Judgment Reply ("Shaw Reply Decl."), ¶¶ 12-13, Ex. X.)

63.    The screenshots above from the video of the Social Battery Pin posted on Facebook Reels on April 28, 2023 depict every copyrightable element of the Social Battery Pin (alone or when viewed together). (Shaw Reply Decl., ¶¶ 12, 14, Ex. X.)

64.    The deposit copy of the Social Battery Pin (left below) depicts the same copyrightable elements of the Social Battery Pin, if any, as the screenshots from the video of the Social Battery Pin posted on YouTube on April 27, 2023 (right below).

 

(Sorrentino Decl., ¶ 5, Ex. D; Shaw Reply Decl., ¶ 14, Ex. Y.)

65.    The screenshots above from the video of the Social Battery Pin posted on YouTube on April 27, 2023 depict every copyrightable element of the Social Battery Pin (alone or when viewed together). (Shaw Reply Decl., ¶ 14, Ex. Y.)

66.    The deposit copy of the Social Battery Pin (left below) depicts the same copyrightable elements of the Social Battery Pin, if any, as the image in the April 28, 2023 Twitter/X post (right below).



(Sorrentino Decl., ¶¶ 5, 18, Exs. D, Q.)

67.     The image in the April 28, 2023 Twitter/X post, reproduced above, depicts every copyrightable element of the Social Battery Pin. (Sorrentino Decl., ¶ 18, Ex. Q.)

68.     The photographs and videos of the Social Battery Pin posted across social media on or before April 28, 2025 depict the Social Battery Pin from multiple angles, and with the "lightning bolt" in multiple angles and positions relative to the rest of the pin, including in the examples shown below. The videos also demonstrate a person sliding the "lightning bolt" across the pin.



(Shaw Reply Decl., ¶¶ 12-14, Exs. X-Y.)

69.     Plaintiff also sold versions of the Social Battery Pin with magnet backs instead of pin backs. (Shaw Reply Decl., ¶ 15, Ex. Z.)

70.    Plaintiff has not produced any evidence that Defendants had access to copy the physical pin rather than photographs or videos of the pin between May 12, 2023, and June 10, 2023, the date Defendants sold an allegedly infringing product (*see supra* ¶ 4). Indeed, Plaintiff states that as of June 28, 2023, the first batch of the Social Battery Pins was still in the pre-order phase. (*See supra* ¶ 56.) No deliveries of the Social Battery Pins were made until September, 2023. (Shaw Reply Decl., ¶ 16, Ex. AA.)

Date: June 13, 2025

Respectfully submitted,

By: */s/ Scott P. Shaw*

**MERCHANT & GOULD P.C.**
Peter A. Gergely (NY Bar #5671458)
pgergely@merchantgould.com
500 Fifth Avenue, Suite 4100
New York, NY 10110
212.223.6520

Scott P. Shaw (admitted *pro hac vice*)
sshaw@merchantgould.com
8383 Wilshire Blvd., Suite 935
Beverly Hills, California 90211
949.330.0202

Leighton Zhao (admitted *pro hac vice*)
lzhao@merchantgould.com
150 South Fifth Street, Suite 2200
Minneapolis, MN 55402
612.332.5300

*Attorneys for Defendants*